IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BELINDA S. FAGAN, | ) | CASE NO. 1:09 CV 00019 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Belinda Fagan's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

**I. INTRODUCTION and PROCEDURAL HISTORY**

On November 21, 2003, Plaintiff filed an application for Disability Insurance benefits, alleging a disability onset date of December 31, 1996, due to back pain (Tr. 58-60). Plaintiff desires to establish that she was disabled prior to her date last insured ("DLI") of September 30, 2002. Born on October 25, 1961, Plaintiff was 44 or 45 at the three hearings between 2006 and 2007, and a "younger individual" for purposes of the Social Security regulations (Tr. 58, 389, 464). *See* 20

-1-

C.F.R. §404.1563. Plaintiff completed three years of college (Tr. 76). She has past relevant work experience as a nursing assistant, an EMT, a travel agent, a printer's assistant, and a medical transcriber (Tr. 90). Since her onset date, she had also worked a few hours a week as a school proctor (Tr. 90).

Plaintiff's application for benefits was denied initially and upon reconsideration (Tr. 43-46, 48-50). Plaintiff requested a hearing (tr. 51) and, on January 18, 2006, appeared with counsel and testified before Administrative Law Judge Morley White ("the ALJ") (Tr. 389-457). Medical expert Hershel Goren, M.D. ("ME Goren"), and vocational expert Evelyn Sindelar ("VE Sindelar") also testified (Tr. 420, 447). An additional supplemental hearing was held before the ALJ on February 1, 2006 (Tr. 458-463). The ALJ issued a fully favorable decision dated January 13, 2006,[1] finding Plaintiff to be disabled and unable to perform any work existing in significant numbers in the national economy (Tr. 341-344). On June 26, 2006, the Appeals Council remanded the case, ordering the ALJ to further consider certain evidence from the record and to reevaluate his conclusions (Tr. 345-348). The ALJ held a remand hearing on January 2, 2007 (tr. 464-503), and on March 29 issued an unfavorable decision (Tr. 14-27). He found at Step Four of the five-step sequential evaluation[2] that Plaintiff had the residual functional capacity ("RFC") to perform her past

---

[1] It appears the decision was meant to have been dated *February* 13, as January 13 fell before either hearing.

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §404.1520(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If claimant is not doing substantial gainful activity, her impairment must be severe

relevant work as a printer, medical transcriber, or travel agent (Tr. 18, 25-26). He relied on the testimony of VE Sindelar and ME Goren to find that Plaintiff retained the capacity to lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently, and that she could sit, stand, or walk for six hours in an eight-hour workday (Tr. 19). Plaintiff requested review from the Appeals Council, but it denied Plaintiff's request, thereby making the ALJ's decision the final decision of the commissioner (Tr. 7-9, 13). On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

## II. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. § 423. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

---

before she can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

*See* 20 C.F.R. § 404.1505.

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  ANALYSIS

**A.  Whether the ALJ Erred by Failing to Consider Evidence of Arachnoiditis and in Finding that Plaintiff does not Meet Listing 1.04(B)**

Plaintiff claims that the ALJ did not consider evidence that suggested a diagnosis of arachnoiditis, and that he erred in finding that Plaintiff's condition does not meet or equal Listing 1.04(B).  Section 1.04 of the medical listings addresses:

> "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours."

(20 C.F.R. pt. 404, subpt. P, App. 1.)

Arachnoiditis is a specific condition, requiring "adhesive thickening of the arachnoid."  *See* 20 C.F.R. pt. 404, subpt. P, App. 1, sec. 1.00.K.2a.  Plaintiff asserts that "fibrosis" or scar tissue is enough to equal the objective confirmation of the 1.04(B) listing. Plaintiff advances no relevant law for this assertion.  Additionally, contrary to Plaintiff's claim, *see* doc. 18, at 12, ME Goren did not testify that arachnoiditis is another term for scarring.  Plaintiff argues that the subjective elements of arachnoiditis – i.e. severe burning or painful dysesthesia, resulting in the need for changes in position – are met, and that the scarring present in the imaging satisfies the "appropriate medically acceptable imaging" requirement.

Some recent district court cases have elaborated on the use of imaging and the extent to which experts can make inferential diagnoses of arachnoiditis.  In a case where the court did find appropriate medically acceptable imaging for a diagnosis of arachnoiditis, the evidence was supported by objective tests and unequivocal diagnoses from treating physicians.  *See Phillips v. Comm'r of Soc. Sec.*, No. 1:08cv333, 2009 WL 2486010 (S.D.Ohio, Aug. 11, 2009) (ample medical

evidence included x-rays, multiple abnormal MRIs, and an abnormal EMG which supported a doctor's opinion that patient met the listing); *cf. Green v. Astrue,* No. 1:08-cv-2, 2008 WL 4791512 (E.D.Tenn, Oct. 28, 2008) (EMGs which *suggested* radiculopathy did not rise to a diagnosis of radiculopathy, particularly where doctors declined to make that diagnosis). In this case, Plaintiff has failed to point to such evidence and, in fact, ME Goren specifically discounted the possibility that Plaintiff's test results constituted hard evidence of arachnoiditis. At the hearing, he stated "[t]he fact that four MRIs show[] scarring only confirms that claimant had surgery... [i]t says nothing about whether or not she has pain... [The EMGs show that her nerves are] not abnormal enough for somebody with arachnoiditis" (Tr. 422). ME Goren's statement that "she does have arachnoiditis" (tr. 422) seems either to have been a misstatement or a transcription error, as the remainder of ME Goren's testimony reflects that he does not believe Plaintiff has arachnoiditis. It is significant that even Dr. Jerome Yokiel, who believes that Plaintiff is sufficiently disabled to receive benefits, declined to advance a diagnosis of arachnoiditis after his own review of Plaintiff's MRIs, including the most recent post-DLI test from January, 2005 (Tr. 340).

Plaintiff's argument that the ALJ did not adequately consider all the evidence is not convincing. None of the involved doctors, whether treating or non-treating, found evidence of arachnoiditis during the time they interacted with Plaintiff. Plaintiff's argument is largely based on repeated findings of "scarring," which does not satisfy her burden of proving the objective requirements of the listed condition. She claims that the ALJ must consider "***all*** EMG and MRI reports and interpretations... by treating medical specialists," (Doc. 18, at 14) and is correct in her assertion that the ALJ, not the physicians, has the final responsibility for determining whether a condition meets a listing. (*Id.*, SSR 96-5p.) However, the thrust of Plaintiff's argument seems to

be that the ALJ did not adequately consider Dr. Yokiel's opinion, even though Dr. Yokiel never advanced a diagnosis of arachnoiditis. In fact, none of the doctors diagnosed Plaintiff with this condition. Dr. Yokiel did request the 2005 MRI in November 2004, and wrote that "patient's symptoms have worsened since the last MRI examination" (Tr. 254). Yet Dr. Yokiel still did not opine that Plaintiff had arachnoiditis, even after receiving the results from the MRI conducted after Plaintiff's DLI. The ALJ adequately addressed Dr. Yokiel's and ME Goren's analyses of the tests in his decision, and he had substantial evidence to conclude that Plaintiff does not meet the requirements of listing 1.04.

**B.     Whether the ALJ Erred in Giving More Weight to the Opinion of ME Goren than to that of Plaintiff's Treating Physician Dr. Yokiel**

Plaintiff argues that the ALJ did not adequately credit the opinion of Dr. Yokiel, her treating physician. "The opinion of a treating physician is entitled to substantial deference only if it is supported by sufficient medical data." *Shelman v. Heckler*, 821 F.2d 316, 320-21 (6th Cir. 1987). An ALJ must give good reasons for not giving weight to the opinion of a treating physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F. 2d 541, 544 (6th Cir. 2004). In considering what weight to afford the opinions of each doctor, an ALJ should consider: 1) the length, frequency, nature, and extent of the treatment, 2) the supportability and consistency of the conclusions, and 3) the specialization of the physician. 20 C.F.R. §404.1527(d).

Dr. Yokiel began treating Plaintiff in October, 2003, over a year after her DLI (Tr. 24, 264). Dr. Yokiel opined in 2006 that Plaintiff can rarely or never lift over ten pounds, that she can only sit for ten minutes or stand for 15 minutes at a time, that her pain would cause her to miss at least four days of work per month, and that these limitations have affected her since 1988 (Tr. 305-06).

Plaintiff cites *Shelman* to support her argument that Dr. Yokiel's opinion should be given controlling weight. In *Shelman*, the ALJ did not explain why he gave greater weight to the opinions of the non-treating medical advisors than to the opinions of plaintiff's treating physicians, nor did he address how the objective evidence related to the opinions of the various doctors. *See Shelman*, 821 F.2d at 321. Here, in contrast, Dr. Yokiel's opinions were not supported by medical evidence and conflicted not only with those of the State examiners and ME Goren, but also with those of the physicians who treated Plaintiff before her DLI. Doctors Metz, Kriegler, Furey, Risius, and Takacs all acknowledged that Plaintiff was in pain; some recommended exercise or formal pain management, but none placed any restrictions or limitations on Plaintiff (Tr. 168, 206, 208-212, 221-227, 328-335). "A lack of physical restrictions constitutes substantial evidence for a finding of non-disability." *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. Appx. 988, 995 (6th Cir. Nov. 28, 2007). Thus, the ALJ was justified in giving more weight to the opinions of other physicians than to those of Dr. Yokiel and in concluding that Plaintiff was not disabled.

Furthermore, Dr. Yokiel's opinions lack consistency. In a medical source statement from April 7, 2004, Dr. Yokiel opined that Plaintiff would be able to stand for two hours at a time and for five hours in an eight-hour workday (Tr. 258). Yet in 2006 he asserted, *inter alia*, that Plaintiff can only stand for 15 minutes at a time and that her symptoms had been that limiting since 1988 (Tr. 306). Additionally, much of the support advanced by Dr. Yokiel consists of subjective notes regarding how much pain Plaintiff was feeling at a certain time (Tr. 251-63). For instance, he lists "increasing pain with straight leg raising" as an objective observation in his progress note from Plaintiff's visit on August 18, 2005 (Tr. 251).

Dr. Yokiel's truly objective observations are not inconsistent with those of the other doctors.

-8-

He notes "[n]o significant recurrent disc herniation or stenosis" (tr. 253), and that "[s]he does have documented epidural fibrosis" (Tr. 257). These observations are consistent with those of Dr. Furey, who observed "no evidence of recurrent disc herniation" (tr. 209) and ME Goren, who testified that the fibrosis was evidence of surgery and indicated "nothing about whether or not she has pain" (Tr. 422). The objective evidence in the record was interpreted differently by different physicians and the ALJ considered all the opinions in making his decision. The ALJ is not bound by the opinions of a treating physician if those opinions are not supported by objective medical evidence. *See Shelman*, 821 F.2d at 320-21. In this case, for the reasons outlined above, the ALJ reasonably discounted Dr. Yokiel's opinions on the basis that they do not satisfy the elements of supportability and consistency.

      The ALJ also notes that Dr. Yokiel began treating Plaintiff over a year after her DLI. Plaintiff contends that despite this length of time between her DLI and her first visit with Dr. Yokiel, Dr. Yokiel's opinion should still be given significant weight. Plaintiff asserts that "an inference of disability prior to the date of actual diagnosis by objective test results is appropriate when the impairment in question is of a slowly progressive nature." *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989); *see also Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976) (holding "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at a preceding time.") Plaintiff relies on these cases in an attempt to characterize her pain as a "progressive impairment," and as a reason to give more credence to Dr. Yokiel's retrospective opinion. In *Blankenship*, a psychiatric case, the court inferred that the claimant was disabled despite a lack of recent hard medical evidence, on the basis that "a psychiatric impairment is not as readily amenable

-9-

to substantiation by objective laboratory testing as a medical impairment." *Blankenship*, 874 F.2d at 1121. There, the claimant had not been treated for a long time, and his treating psychiatrist opined that he was disabled by a progressive impairment, so the court reasonably relied on the opinions of that treating psychiatrist to infer that the claimant was disabled. Similarly, the *Begley* holding addressed black lung disease, also a progressive impairment of which Plaintiff had scant prior physical evidence. Plaintiff does not contend that she has any psychiatric impairments, nor does she advance medical or legal support that arachnoiditis or any other alleged back problems are "progressive." In the present case, the record does contain medical evidence based on substantial recent treatment, and the ALJ has assessed that evidence. Because there is sufficient medical evidence to support the ALJ's determination, and because Plaintiff has not demonstrated that her back problems are progressive, *Blankenship* and *Begley* offer little support for Plaintiff's argument that Dr. Yokiel's opinion should be given greater weight than those of other physicians.

The ALJ also notes that Plaintiff's argument with respect to *Blankenship* and *Begley* is moot. The issue in those cases was whether evidence from a later time period could be used to establish the existence of a severe impairment for purposes of step two of the disability analysis. Here, the Commissioner does not dispute that Plaintiff had and still has a combination of severe impairments and that she has satisfied step two. The question is the extent of her disability and consequently how much weight to give each physician's opinion in making a step four RFC assessment. Dr. Yokiel is the only doctor, treating or non-treating, who opined that Plaintiff's condition is sufficiently severe to qualify as disabling, and that it was disabling prior to her DLI.

Additionally, the ALJ is justified in giving less weight to Dr. Yokiel's opinions precisely because he began treating Plaintiff so long after her DLI. *See Siterlet v. Sec. of Health & Human*

*Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (holding that an ALJ correctly gave little weight to a physician who did not begin treating the claimant until eight months after claimant's DLI). Plaintiff's frequent visits to Dr. Yokiel and the fact that he treated her for such a long time are not determinative factors in the ALJ's analysis because her impairment has not been established as progressive and because he did not begin treating her until over a year after her DLI.

Plaintiff also contends that the ALJ ignored Dr. Yokiel's status as a "board certified pain management specialist," in contravention of the requirement set forth in 20 C.F.R §404.1527(d) that the ALJ consider the specialization of the physician. (Doc. 18, at 20). Plaintiff is correct that the ALJ does not specifically discuss this factor with respect to Dr. Yokiel, although the ALJ does indicate in his written decision that ME Goren is a board certified physician. Dr. Goren has a specialty in neurology and spine pain (Tr. 355). Because Dr. Yokiel is not the only "board certified" specialist, that factor alone does not require that his opinion be given any extra weight. Moreover, even if Dr. Yokiel were the only board certified specialist, his opinion would still not necessarily be controlling, as "specialization" is only one factor for an ALJ to consider. *See* 20 C.F.R. §404.1527(d).

Plaintiff further claims that if the ALJ needed more information regarding her condition, "it was incumbent" upon him to seek out further evidence of disability. (Doc. 18, at 19). An ALJ should attempt to obtain more information "[i]f the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled." 20 C.F.R. §404.1527(c)(3). In this case, the ALJ did not need more information. He found that the testimony and medical evidence were sufficient and consistent enough to reach the conclusion that Plaintiff is not disabled, and

substantial evidence supports that determination.  Plaintiff has the burden of proving disability, and she had opportunities to seek out and introduce new evidence that could change the ALJ's mind. *See e.g.*, *Landsaw v. Sec. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (holding that the burden of providing a complete record rests with the claimant).

The ALJ is the finder of fact, and he had good reasons to give Dr. Yokiel's opinions less than controlling weight.  He fulfilled his obligation by discussing his reasons for discounting Dr. Yokiel's opinion and for giving more weight to the opinion of ME Goren.  Thus, the Court finds no merit to Plaintiff's argument that the ALJ erred in his treatment of Dr. Yokiel's opinion.

**C.    Whether the ALJ Erred in Discounting Plaintiff's Credibility**

An ALJ must state his reasons for finding that a claimant is not credible.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Here, the ALJ sets out the list of criteria that he should consider in assessing Plaintiff's credibility.  These include 1) daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) aggravating and precipitating factors; 4) type, dosage, effectiveness, and effects of any medication taken by Plaintiff; 5) treatment received other than medication; 6) other types of self-treatment; and 7) any other factors concerning Plaintiff's limitations and restrictions.  20 C.F.R. §404.1529(c).  The ALJ's analysis reflects that he applied the appropriate framework in assessing Plaintiff's credibility, and that substantial evidence supports his determination.

The ALJ notes that there were substantial gaps in Plaintiff's treatment history, whether it was failure to follow up on a pain management recommendation, or a long hiatus between doctor visits for her back pain.  The ALJ concludes that these gaps "suggest[] that the symptoms may not have been as serious as had been alleged" (Tr. 22).  He notes that she took medication, but there were long

gaps in her renewal of prescriptions, including "only one medication refill in 2000" (Tr. 21). At the time she resumed her regular office visits in December 2000, she was not taking any medication (Tr. 21). He notes that she did not receive any pain management treatment between her onset date and her DLI, and that none of her doctors provided for any limitations or restrictions.

Plaintiff does not specifically address the gaps in doctor visits or prescription renewal but asserts that she has "consistently sought treatment, [and] undergone procedures and tests suggested by her treating physicians which she could afford." (Doc. 18, at 21). She notes that the failure to follow up on pain management was a result of the refusal of her worker's compensation carrier to pay for it and claims that the ALJ unfairly discredited her complaints based on her failure to obtain treatment that she could not afford. She does not contend, however, that financial concerns prohibited her from seeing a doctor for her back problems or getting prescriptions for most of 2000. She was able to visit Dr. Steven Takacs for her depression in 1999 and accidents that resulted in shoulder and foot problems in 2000 (Tr. 332-35). The ALJ observes that "the record for the period in question shows she was able to afford medical care whenever her condition flared up" (Tr. 22). It is also somewhat significant that during this period, Plaintiff mentioned lifting and heavy work as precipitating factors of these flare-ups (Tr. 205). One of her flare-ups occurred in 2001 after she hit a softball (Tr. 199).

Plaintiff argues that "[t]he ALJ attributes more activity to Fagan than is supported by the record." (Doc. 18, at 21). She claims that the ALJ's decision addresses mostly written reports in the record and fails to cite much of her testimony at the hearing. As an example, she suggests that the ALJ's statement that Plaintiff can "do laundry" (tr. 22) implies a different conclusion than her testimony that "[she] was able to load the washing machine but unable to unload the dryer" (Tr. 419).

While the ALJ's written decision does not always use exact quotes from the hearing, it also does not attribute extra activities to Plaintiff, and in several instances it accepts her testimony. For instance, the ALJ does accept her testimony that "[she] didn't use a leaf blower" (Tr. 484), although the February 2000 report from Dr. Takacs seems to indicate otherwise (Tr. 332).

Plaintiff concedes that she has been able to cook, bathe her children with difficulty, and run the vacuum cleaner. (Doc. 18, at 21). She is correct that performance of certain household activities is not necessarily comparable to performance of typical work activities and should not absolutely reflect negatively on her credibility. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). However, "an ALJ may consider household and social activities in evaluating complaints of disabling pain." *Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Furthermore, the ALJ did not rely exclusively on the examples of household work Plaintiff cites in assessing her credibility. He notes that she cut the grass in 2000 (tr. 22, 332), and did yard work in 2001 (Tr. 22, 208). The fact that Plaintiff was able to engage in these activities at these times does not correspond well with her alleged disability onset date of December 31, 1996. The ALJ was entitled to consider Plaintiff's activities as well as the dates she engaged in them in making his determination.

The ALJ writes "her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (Tr. 21), and her "description of the severity of the pain has been so extreme as to appear implausible" (Tr. 23). He further states "[i]n written applications, she described being unable to stand, sit, walk, dress herself, bathe herself, vacuum, bend, lift, climb stairs, rise from a seated position, or work. She said she has difficulty urinating because of the pain" (Tr. 23). The ALJ did not find that Plaintiff was entirely credible in making these statements, based

on his review of her work and daily activities since her alleged onset date in 1996. He also had the opportunity to observe Plaintiff at two hearings. "Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Hardaway v. Sec. of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)). The ALJ had substantial evidence to find that Plaintiff was not disabled prior to her DLI and therefore did not err in assessing her credibility.

## V. **DECISION**

For the foregoing reasons, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court AFFIRMS the decision of the Commissioner.

                                       s/ Kenneth S. McHargh
                                       Kenneth S. McHargh
                                       United States Magistrate Judge

Date: February 5, 2010.